Can both counsel hear me? I can, Your Honor. Okay. All right, we'll hear argument now in the second case on the oral argument calendar, which is 19-55128, Optional Capital, Inc. v. DAS Corporation. Mr. Rogari, you may proceed. Thank you, Your Honor. My name, again, is Ralph Rogari, and I represent the appellant, Optional Capital, Inc. I'd like to reserve five minutes of my time for rebuttal. May it please the Court, this is a time of great uncertainty with this virus causing anxiety, turmoil, and hardship throughout our communities. But throughout the history of our country, there has never been any uncertainty whatsoever about the core bedrock principle that underlies this appeal. As stated in Gompers v. Buck's Stove and Range Company, if a person can set aside a judgment by his own disobedience, then our courts are impotent, and what is now fittingly called the judicial power of the United States would be a mere mockery. Optional worked eight long and hard years litigating to prove that the $15 million in funds that was sitting in Alexandria's Credit Suisse bank account when the government arrested those funds in August of 2005 had been stolen from it. The May 23, 2013 final judgment contains the District Court's final expression of Optional's victory. But we find ourselves here today because in a somewhat unusual manner, Judge Virginia Phillips misread that victory as being against the Credit Suisse bank account itself. Counsel, didn't Chief Judge Collins in her order back in 2011, didn't she essentially remove from the case the issue over the funds that had been withdrawn from the account and then proceeded only as to the remainder of what was in that account? No, Your Honor. She could not have done that. She was not requested to do that. The citations that counsel takes out of context come from an order where we were requesting that the court exercise its discretion and require Doss to return the funds or to give the funds to the District Court until the adjudication was made as to the ownership of those funds. But there was never a request made by Doss or any other person that those funds be released from the court's custody that the government had acquired for it. Now at the time, Judge Collins exercised her discretion to not require Doss to return the funds at that time. But then, far different from 2013, the court had not determined who actually owned those funds. And that was what this court in U.S. v. Doss had mandated that the court do. Determine who is the owner of those funds. That hadn't occurred in 2011 in any way, shape, or form. But what Optional was doing at that time was requesting that those funds be put specifically in the court and Judge Collins, we could not convince the court that Judge Collins abused her discretion in making the decision to not exercise her discretion. She declined to hold them in contempt in 2011. She then declined to order them to put the funds into escrow. And then, before the trial took place, she dismissed them from the case. And thereby, by those rulings, making clear that any issue about the funds that were in their possession that had been withdrawn from the account in question were no longer in the case. Isn't that the clear import of those orders I've just described? No, Your Honor. That could not be the clear import of those orders because the issues that you are describing about removing the funds from the jurisdiction of the court were not an issue there. The only thing that was... No, it's that she still had jurisdiction if she wanted to, you know, render a potentially advisory or, as Justice Blackmun called it, a useless opinion. But she declined to do so in light of her loss of effective control over them. And that was not an abuse of discretion. Well, it was not an abuse of discretion for her to decline to require DOS to move the funds to the United States at that point in time. And it was not an abuse of discretion, we submit, because at that point in time, the transferee of the funds to DOS, Alexandria Investment and the Kims, could still have been determined to be the owner. In which case, Optional would then have no right to those funds. Do you think that she went ahead with the proceeding to determine the rights of the competing claimants in those funds that had been removed, even though one of the claimants was not there and had been dismissed from the case on the grounds that they didn't have any interest in the remainder of the case? That's your reading of what she did? Absolutely, that's what she did. We never once gave up our claim to those funds. It was our claim to the funds that was litigated. DOS voluntarily withdrew its claim. Even though it had $12.6 million of the funds that were subject to the court's jurisdiction, it voluntarily withdrew its claim. Counselor, you prepared the proposed judgment that she signed, is that correct? I did prepare the proposed judgment. I think if you had added a paragraph that made explicit that you were adding back in the dispute between the competing claimants over these funds, and that she was now deciding that you win versus the other claimants she had previously dismissed, do you think she would have signed that judgment? Yes, Your Honor. I don't read the record that way, to be candid. She dismissed them from this case on the grounds that that issue wasn't in front of her, and then you put a judgment in front of her that you now claim she knew all along she was adding it back in the case. Your Honor, throughout the entirety of the trial, and I would ask the court to look at and review Judge Collins' findings of fact and conclusions of law, which are contained in Volume 1 of the record at pages 13 through 20. And Judge Collins prepared her findings of fact and conclusions of law. And not only in those findings did she say that Optional proved its case by tracing the funds that the Kims stole, through the numerous financial transactions and multiple fraudulent or shell entities, into the Credit Suisse account, and therefore established a constructive trust in those funds at the time that they were in the account in August 8th of 2005. And so therefore Optional was the owner and entitled to, was at all times the owner, and that constructive trust, by definition and by the law of this court, followed those funds when they were transferred to Doss. But she went further and she said that the mere fact that Optional was the remaining claimant, the only person standing in court proving something, proved something, Doss withdrew its claims without proving anything, including the fact that there was no jurisdiction over the funds by virtue of the mere transfer. But for that reason alone, she said in her conclusions of law, that Optional prevailed. She says Optional's claims to the properties are uncontested, and therefore as the only claimant to the above-referenced properties, Optional is entitled to them by default. The property that was at issue in this case, were the funds that had been initially stolen from Optional in 2001. In 2005, when the government seized them, they were sitting in Switzerland. But that's because she's deciding the case in the context, she's resolving the issues in the context of how they've been framed by the prior orders. And if you look at her order in November of 2011, she says that she found that DAS's conduct was not contemptible, and then she rejects your argument that DAS must be kept in the case, and she said the court can still adjudicate the remaining competing claims to the property, even though the value of the account has been diminished. That seems a clear statement that the dispute over these funds between Optional and DAS was no longer in the case, and that's why DAS could be dismissed. Your Honor, DAS moved to be dismissed. It had already withdrawn its claims. It therefore had no claims at that point in time. Optional would have preferred that DAS remain as a party to the litigation. The court didn't just rely on the withdrawal. In the very next sentence, what the court said is, given that DAS has withdrawn its claims, and that the court is not going to order DAS to surrender the funds, DAS's presence in this case is superfluous. That's not consistent with the premise that she then went on and in absentia decided the rights between DAS and Optional. I just don't see how you can claim that from what she said in this order. At the time that that statement was made, Your Honor, DAS had withdrawn its claims. It had no right to make any claims to these funds. Optional's claims remained, and Optional's claims had not yet been addressed. That did not happen for two more years. In those two years, Optional never withdrew any of its claims, and DAS at that time could not, but certainly did not, even ask for an order that would be final and appealable, dismissing those claims. It's dismissing the $12.6 million that it just took possession of from the court. It never even asked for that. In fact, in its own pleadings and its own opposition to the contempt, it argued that the transfer did not affect the jurisdiction of the court over those funds. And the court was called upon to, and in fact did, adjudicate Optional's interest in those funds, as it was required to do by the court in U.S. v. DAS. And so even if you could consider what the statements of Judge Collins as a final judgment that was subject to appeal, they were not. They were statements that were made as part of an interlocutory order. And so she had the ability to change those particular, her statements at any point in time or change what she was doing at any point in time. I don't know, I have lost the court here. You just have over a minute left on the clock. I'll give you some more. The final expression of her final judgment is the, I don't know if the court can hear me. It looks like everything is frozen. No, I can still hear you. I'm just wondering whether you want to save time for rebuttal. I'll give you a few extra minutes also on rebuttal, but you may want to save your remaining time. Yes, Your Honor. I will save my remaining time. All right. And I'll give you a few extra minutes when your time comes up. All right. We'll hear now for counsel for DAS Corporation. Good morning, Your Honor. May it please the court. Prashant Chennakesavan for the Atlee DAS Corporation. We are here on an order denying a request for contempt sanctions. The district court did not abuse its discretion in finding that Optional did not prove by clear and convincing evidence that DAS violated a specific and definite court order. DAS here was a competing claimant with Optional in the underlying litigation. DAS alleged that it was a victim of a Ponzi scheme perpetrated by the Kim claimants and that it was entitled to the $12.6 million, which were a portion of the $15 million sitting in a Swiss bank account. Now, as Judge Collins highlighted, the backdrop to this appeal is a set of orders that Judge Collins entered in 2011. And, again, because we're here on a motion for contempt, we have to look at the entirety of the record, and the district court certainly is entitled to its factual determination of the previous history, the statements that it made to DAS, and the statements on which DAS was entitled to rely. Judge Collins. I understand the 2011 order, but how do you explain the 2013 order, just the language? I mean, it says, quote, all funds and credits Swiss private banking account number in the name of Alexandria Investment LLC as of August 8, 2005. So if we were just looking at 2013, the judgment, you know, how does that support your position? Well, a couple of responses to that, Judge Lee. First of all, it's very, very clear from the context of the litigation that what the court was referring to there was the remaining funds that were also present in the account as of 2005. So to the extent that there were funds before 2005, those would not be material. And certainly Judge Collins made clear that funds that were withdrawn between 2005 and 2013 were no longer part of the case. So certainly optional, based on that finding, or at least has a finding that it's the owner of the remaining balance, whatever remains in that account. And Judge Collins made that abundantly clear time and again, when DAS was still a party to the case. The second response is the very fact that we're having this discussion about what various orders means, all of that means that DAS cannot be held in contempt. Because once again, we're here on a motion for contempt sanctions, which requires a clear and definite order that DAS, of which DAS was on notice and that DAS violated. That clearly did not happen here. There was no definite order instructing DAS to return the funds. There was no definite order stating that the funds that DAS had transferred to it by Swiss authorities in 2011 were adjudicated as part of the 2013 judgment. And the 2013 judgment doesn't mention DAS at all. And again, Judge Collins, who was the presiding officer, knew of this history. If she intended to change course, and as Judge Collins pointed out, and change course and bring those funds back into the litigation, she could have made that abundantly clear and said, even though I previously stated that a sovereign with concurrent jurisdiction released these funds to DAS, even though I stated that DAS would not be required to return the funds, I'm now going to adjudicate ownership and instruct DAS to return the funds to optional. Now, we believe that there would be some issues with respect to both the useless judgment rule as well as effectiveness if she had said that, but that's not what she said. And it was very clear, and I think the record is clear, that when she was presented with a proposed judgment prepared by optional, she did not modify it in order to bring those funds back in. Now, I do want to address... Did you alert her that you were removing the funds from her practical control that were in clearly had, to which her jurisdiction had attached? Did you alert her to that before you took those funds out of the Swiss account? Before, I believe the record is silent on what happened before the funds were transferred by Swiss authorities to DAS. You seem surprised by it and disappointed. That's correct, Your Honor. And also, the other thing we have to keep in mind is that at the time the Swiss authorities transferred the funds, the initial MLAT freeze that the government had secured, that had expired as well. Did anyone ever tell the district court that it had expired? Based on the record, Your Honor, it seems like the government did not, and the government was responsible for securing and maintaining the MLAT freeze. And its report, starting at SER 280, makes clear that it was told, it was informed by Swiss authorities that they would no longer maintain the MLAT freeze once the government dropped off as a plaintiff. And it appears here that the government did not inform any of the parties of that fact, which also sort of brings us to a somewhat interesting set of dynamics here, which is that the court never had actual control over the funds. And as Judge Collins highlights at SER 127 and SER 140 and 141, her different orders on this, there was another sovereign, here Switzerland, that had concurrent jurisdiction. And that's because the funds were in Switzerland, and the Swiss government had actual control over those funds. So there are a myriad of things that Optional could have done to secure its rights, both before the judgment, before the 2011 transfer, and afterwards. And it chose not to do that. Optional could have initiated a competing investigation in Switzerland. Chose not to do that. Optional could have coordinated with the U.S. government to ensure that a freeze remained until the judgment. Chose not to do that. Optional could have requested that Swiss authorities maintain the status quo, either before 2011 or after 2011, made a request to Swiss authorities to revert to the status quo and exercise that sovereign's authority over bank accounts within its territory to either claw back the funds or do something of that nature in order to ensure. But she could have. I mean, Chief Judge Collins said had she wanted to do so, she would have had jurisdiction to go ahead and proceed to decide the entitlement to the funds, even though she had lost practical control. Isn't that right? Well, we have two responses to that, Your Honor. I think there's a question of effectiveness and a question of jurisdiction. So as this court made clear in the United States versus 1.67 million, the total aviation case, whenever you have actual property located abroad and there's an in-rem proceeding in the United States, the effectiveness of any judgment always relies on the cooperation of the foreign sovereign. That has never changed. And that's what this court has held in 1.67 million. That's what the D.C. Circuit held in Banco Español, and the Third Circuit held as well. Now, with respect to jurisdiction, we believe it's a little bit more nuanced there. And we would highlight this court's decision in the United States versus 493,850 in U.S. currency, where it addressed what happens if property is dispersed or disposed of after the initiation of the action. And this court held, following the Republican National Bank decision by the Supreme Court, that if the property is disposed of, the useless judgment rule applies and jurisdiction is stripped as well. We don't believe that you all have to reach those questions today because, once again, the record is clear that there is no clear and definite order that made those funds part of the judgment and certainly no clear and definite order to DAS instructing it to return those funds. The other aspect that is worth mentioning here is that if DAS believed the 2011 orders were somehow in error, it certainly could have filed a notice of appeal after it received the 2013 judgment to put those orders before this court and sort of re-adjudicate what happened in 2011. Instead, DAS filed a petition for a writ of mandamus in 2011. That was denied. It filed an interlocutory appeal in 2012. That was dismissed. And it chose not to appeal the 2011 orders after the final judgment when it certainly could have done so. Instead, it just sort of waited five years. And the other thing that DAS did not do during those five years is try to effectuate. If DAS believed, I'm sorry, if Optional believed that it was entitled to the transferred funds as a result of the 2013 judgment, it certainly could have tried to effectuate the judgment in Switzerland, the country that always had actual control over the funds.  So the current procedural posture is one where we are left to sort of have, even if we credit all of Optional's argument, a disagreement about what these various orders mean. And that means that contempt sanctions are unavailable. The one other issue that we would like to highlight is that this court addressed a very similar set of circumstances in Credit Suisse and in Re Philippine National Bank. And those cases involved the very same sovereign, Switzerland, and involved the very same entity, Credit Suisse. And whether or not a district court has the power to enjoin conduct by a foreign sovereign or by Credit Suisse. And in both Credit Suisse versus Central District of California, as well as in Re Philippine National Bank, this court held that a district court does not have the authority to do that. And that's because, once again, we have a case here where there's concurrent jurisdiction, as Judge Collins recognized. And the Swiss authorities made a decision initially to cooperate with the U.S. government and its MLAT request. The Swiss government made a decision subsequently that it would not maintain an MLAT freeze. And the Swiss government made a decision to lift an additional freeze that it had placed as a result of a money laundering investigation and order funds transferred to DAS in Korea. So Philippine National Bank and Credit Suisse are abundantly clear that a district court does not have the authority to either enjoin conduct by a foreign sovereign or issue orders that would have to undo conduct by a foreign sovereign. And that's exactly what we have here. And so we believe that, in addition, that the active state doctrine, which this court identified and articulated in Credit Suisse and in Re Philippine National Bank, would prohibit any order requiring that any transfers in 2011 be undone. The Swiss, no one in Switzerland, purported to resolve the legal issues surrounding the competing claims to the funds between DAS and optional. That's correct, Your Honor. And that's the issue that, you know, they claim has been resolved in this judgment. So there's no active state with respect to that issue from a foreign sovereign. Yes and no, Your Honor. We agreed that Switzerland did not resolve competing claims because, candidly, that wasn't presented to it. Optional never filed an action in Switzerland claiming that it was entitled to funds. But if we go back to the factual scenario of Credit Suisse versus Central District of California and in Re Philippine National Bank, that's the exact same scenario that was presented there, where the Republican of the Philippines made a request to Switzerland asking that accounts be frozen and that money is transferred to it, even though there was an action pending in the United States. There was a class action pending in the United States by other victims of Ferdinand Marcos, the former Filipino president. And this court held that, you know, regardless of the reasons why Switzerland may choose to either effectuate a transfer or place or lift a freeze, those are paradigmatically sovereign decisions and ones that cannot be challenged by a district court and cannot be enjoined by a district court. With that, Your Honor, unless there are further questions, we would ask that the court affirm. We believe that it's abundantly clear here that there was no clear and definite order requiring DAS to do anything and therefore contempt sanctions are unavailable. Thank you, counsel. Thank you. Mr. Rigari, we'll reset the clock at four minutes, please. Thank you, Your Honor. I think counsel for DAS made an important admission that the 2011 orders of Judge Collins were interlocutory orders. They were not final expressions of the court's determinations as to the merits of a certainly not optionals claim. And even the question of jurisdiction. And DAS, by fairly dismissing its claims, gave up those claims and by definition lost and was solely and totally dependent upon the claims of the Kims. And it must be remembered that even after DAS withdrew its claims, the Kims continued to litigate. And the Kims, like DAS, never moved to have the funds that they had transferred to DAS removed as a defendant to this case. They proceeded in the trial, including when optional was presenting its evidence, to be parties. And they voluntarily withdrew their claims ultimately during the trial. But throughout those two years, DAS's transferees never once moved to have the court remove the $12.6 million that they had successfully transferred to DAS from the jurisdiction of the court. And so by her final expression of the final judgment here, Judge Collins found, and necessarily found, that she had jurisdiction over the funds. And she issued an order that is enforceable. It is enforceable both by the language of the order releasing the funds to optional, which is an enforceable order against DAS, who is identified with those funds and admittedly still has them in its possession. Your response to counsel's argument that when she lost control of the funds, she was essentially stripped of jurisdiction to decide the dispute? That's an argument, Your Honor. It is contrary to what we believe Ninth Circuit law is. The Ninth Circuit, and even in this case, in Real Property 1, found that jurisdiction, once acquired, is not subsequently lost. It is an argument that is contrary to the very arguments DAS made in 2011 in an attempt to defeat an order requiring it to move the property back to the United States, where it conceded that the transfer did not in any way effectuate the jurisdiction of this court to make a determination as to whether Optional in fact owned those funds, which was the essence of this entire action from Optional's perspective from the time the government unsealed its forfeiture complaint in 2005 and gave notice to the parties that it was seeking to forfeit these funds to itself. And that was recognized as well by this court in Real Property 1. Counsel, your time has expired. I'll give you a few extra minutes. The case just argued will be submitted. We thank counsel for their helpful arguments in the case. Thank you, Your Honor. We are adjourned.
judges: Presnell, Collins, Lee